MARIUS A. SORCHAN, executor of James A. Lachaise, deceased,

*v.*

WILLIAM C. MAYO et al.

1. A complainant in mortgage foreclosure, who nominates and procures to be appointed as receiver his own solicitor and agent, must bear the loss caused by his defalcation and the insufficiency of his sureties.

2. *Quœre.* Whether it would not be well to establish the rule that in all cases a mortgagor should be held responsible for the conduct of a receiver appointed on his motion and nominated by him.

Bill to foreclose. Exceptions to master's report.

*Mr. Richard V. Lindabury,* for the exceptants.

*Mr. William Brinkerhoff* and *Mr. James F. Fielder, contra.*

PITNEY, V. C.

The single exception taken and pressed is that the master failed to credit, on account of the mortgage indebtedness, the amount of moneys in the hands of a receiver of the mortgaged premises appointed by this court, said moneys being rents collected by him during his receivership, and which he has failed, upon demand, to pay over.

The first point taken by the complainant is that the order of reference did not permit the master to make any such credit.

Sorchan v. Mayo.

This, however, is mere matter of procedure, and as the whole matter is within the power of the court, the exception was argued upon its merits.

The circumstances which either appear of record or were very properly admitted by the counsel of complainant at the argument, are as follows: The complainant is a non-resident, and some time prior to July 27th, 1887, he handed the bond and mortgage, which is the foundation of his suit, to one George E. Sibley, an attorney of New York, living at Elizabeth, New Jersey, with directions, presumably, to put it in course of foreclosure, and Mr. Sibley handed the same for foreclosure to the complainant's solicitor herein, who proceeded to file the bill on the 27th of July, 1887. Subpœnas were issued, returnable in August, and appear to have been served upon most of the defendants.

On the 10th of September the solicitor of complainant presented to the court a petition for the appointment of a receiver, verified by Mr. Sibley in an affidavit which did not disclose his character of agent for complainant. Upon that petition an order to show cause why a receiver should not be appointed was made, and on the return of that order, and upon the nomination of the complainant, Sibley himself was appointed receiver, and entered upon the performance of his duty after having given bond. He also instructed the complainant's solicitor in the conduct of the suit from that time until some time in 1889, when the solicitor became suspicious of him, set about to find the complainant himself, whom he had never seen or heard from except through Sibley, and a long time was occupied in the search before he succeeded in finding him.

For some reason not fully explained, no order of reference was taken until September, 1891, although the answers filed were not of such a character as to cause such delay.

On the 28th of March, 1891, three and a half years after the receiver's appointment, Mr. E. Ellery Anderson, counselor at law, of New York, alleging himself to be the agent of the complainant, presented his petition to this court, entitled in the cause, in which he alleged that the receiver had been collecting the rents, but had neglected to pay the taxes, and had failed and

19

refused to render any account of the moneys received by him, and prayed that an order might be made upon him to render such an account and for further relief. On that petition an order was made that Sibley show cause, on the 6th of April, why he should not render an account. On the return of that order another order was made reciting the previous proceedings and directing Sibley to render an account. On the 9th of May another petition was presented by Mr. Anderson, praying for an attachment against Sibley for contempt, and on that petition, on the 9th of May, an attachment was issued directed to the sheriff of the county of Union, who returned that, by virtue of it, he had taken Sibley into custody and accepted bail, in the sum of $500, for his appearance at the chancery chambers in Jersey City, on the 8th of June, 1891. On the 9th of June Sibley filed an account, by which he admitted gross receipts of rents amounting to $2,255, and claimed credits for disbursements amounting to $935.07, leaving a balance in his hands of $1,319.93, from which he claimed a commission of five per cent., being $112.75, leaving a net balance of $1,207.18 in his hands.

On the 12th of June it was ordered that the matter be referred to a special master, to take and state an account of the amount received by the receiver and what should be allowed for his services &c.

It does not appear that any proceedings have been had upon that order.

On the 26th of October a further petition was presented by Mr. Anderson, reciting the previous proceedings against the receiver, setting out that he was an improper person to act as such, and that he was in contempt of the court, and praying that he should further account for receipts and disbursements since the date of his former account, and that he be removed from the office of receiver, and that a new receiver be appointed in his place, and that he be ordered to pay such new receiver the moneys in his hands.

On that petition an order was made that Sibley pay the amount in his hands to the clerk of the court, and on the 16th of November a new receiver was appointed.

Sorchan v. Mayo.

On the 16th of November a further order was made to show
cause why Sibley should not be adjudged guilty of contempt and.
be committed to jail.   No proceedings appear to have been had
thereunder.

It was admitted at the hearing that the sureties on Mr. Sibley's
bond were probably worthless, and that the moneys collected by
him in his hands would be lost.

Under these circumstances the exceptant contends that the loss
should fall upon the mortgagee, at whose instance, and upon
whose nomination, the defaulting receiver was appointed.   On
the other hand, it is contended by the complainant that the well-
settled rule is that a mortgagee in such case is not responsible for
the default of the receiver, although he was appointed on his mo-
tion and nomination, and such seems to be the rule laid down in
the text-books.

Mr. Maddock, in *2 Mad. Ch. R.* (at *p. 235*), says:

" Where a receiver is appointed at the instance of a mortgagee, the master
generally appoints such a person as the mortgagee proposes, unless there is a
personal objection to the man; but if such receiver embezzles, or otherwise
wastes the rents and profits, the loss, it seems, will fall upon the mortgagor, for
the receiver is considered as an officer of the court."

And Mr. Kerr, in *Kerr Rec.* (at *p. 164*), says:

"A receiver appointed by the court, being appointed on behalf and for the
benefit of all persons interested, parties to the suit, if a loss arises from the
default of a receiver appointed by the court, the estate must bear it as between
the parties to the suit."

To the same effect is *2 Dan. Ch. Pr. 740, 741.*

These authorities all rely upon the single case of *Hutchinson
v. Lord Massarene, 2 Ball & B. 55*, except that Mr. Maddock
cites, in addition, the case of *Rigge v. Bowater, 3 Bro. Ch. Cas.
365.*

The American treatises follow the English.   *High. Rec.* § *270.*
And in *Beach Rec.* § *303* the rule is laid down that

"inasmuch as the receiver is the officer of the court and in possession for
the benefit of all parties, and not for the plaintiff at whose instance he was

appointed, it follows that the plaintiff should not be held responsible for losses which result from his wrongful acts or negligence, there being no participation therein or fraud on the part of the plaintiff,"

citing cases in the courts of this country.

But when we come to examine the cases cited by the English authors we do not find them to support the text to its full extent. The whole of the case of *Rigge* v. *Bowater* is this : " The lord-chancellor intimated his opinion (without deciding the case) that if a receiver be appointed by the court (upon the application of a mortgagee or other encumbrancer) and he afterwards embezzle or otherwise waste the rents and profits, the loss must fall on the mortgagor." But Mr. Eden, in his note to that case, shows that such rule does not always prevail, and it appears that *Hutchinson* v. *Lord Massarene*, instead of holding that the loss in that case fell upon the estate, holds precisely the contrary.

In *Carter* v. *Barnardiston, 1 P. Wms. 505* (at *p. 518*), it was held, on the authority of *Anon., Salk. 153,* that " where one devises land to his executors until his debts are paid, then with remainder over, and the executors misapply the profits, they shall hold only until they might have paid the debts by the profits, and after that the land is to be discharged and the executors only remain liable."

And the case in *2 Ball & B.* was that Lord Massarene conveyed land to a trustee *nominated by his creditors* in trust to receive the rents of the real estate for the payment of their debts, and the trustee having failed to pay over, the loss was directed to be borne by the creditors, and the estate was discharged from it. And see *Kerr* (at *p. 363*) to the same effect.

It was held by Lord Eldon, in *Boehm* v. *Wood, Turn. & R.* (at *p. 345*), that if a person claiming to be entitled to the possession of property, as a vendee under a contract, or a mortgagee, applies in a suit for the appointment of a receiver, and the receiver be appointed, the possession of the receiver is held to be the possession of the party claiming the right to possession.

The cases cited by Mr. Beach in support of his text were not cases of the default of a receiver appointed at the instance of a mortgagee, and are distinguishable from such a case. In one of

Sorchan *v.* Mayo.

them, *Terrel* v. *Ingersoll, 10 Lea 77,* the supreme court of Tennessee, in a case involving the default of a receiver of partnership assets appointed on the application of one partner, lays down the rule thus : "*Prima facie* the complainant is liable for all losses occasioned by the neglect of the receiver to perform his duty, whether it be in realizing the asset or in accounting for it after it is realized. He can shift the burden upon his adversary only by showing that the loss was occasioned by him. The fact that the adversary consents to the appointment of a particular individual as receiver will not change the result, for the receiver is equally the choice of the complainant, and the duty of active diligence still attaches to the latter."

But I do not find it necessary to decide the question whether where an indifferent person is appointed by the court upon the application of a mortgagee and becomes a defaulter, and his sureties are insufficient, the resulting loss should fall on the mortgagee, and have referred to the authorities only for the purpose of showing that they are not all in accord with the general proposition laid down by the text writers. It is also worthy of remark that the case of a mortgagee, who applies for a receiver, stands on a footing decidedly different from that of a creditor who is suing for himself and other creditors, and asks for a receiver to hold the property for the benefit of all the creditors. The mortgagee asks for the rents and profits to be applied to his mortgage, on the ground that he holds the legal title to the premises and is entitled of right to the possession and to receive the rents, and if he himself were in possession he would be entitled to hold it and receive the rents himself until his debt was paid ; and it seems to me that it would be no hardship upon him if the rule were established that he should take the risk of the solvency of the receiver, and that a receiver, so appointed, should be considered as the agent of the mortgagee. Such a rule would make complainants and their solicitors, applying for such appointments, careful as to the character of the men whom they nominate to the court and the responsibility of the sureties given by the appointee.

But whatever may be the rule in ordinary cases, it seems to me that the circumstances of this case render the equity of the exceptants quite plain. Here the complainant nominates, and procures to be appointed, his own solicitor and agent. None of the owners of the equity of redemption took any part in the proceedings; they were all conducted under the instructions of this very agent, and I do not see how the case differs from that of the mortgagee being himself in possession receiving the rents and profits; and it seems to me that when they were paid to the receiver in this case they were, in effect, paid to the complainant, and he, in my judgment, must bear the loss. If a mortgagee applies for a receiver, and nominates one to the court, he should be careful to nominate one who answers the description of a receiver, viz.: "An indifferent person between the parties appointed by the court to receive the rents, issues, or profits of land or other thing in question in this court pending the suit *where it does not seem reasonable to the court that either party should do it.*" *2 Edw. Rec.*, citing *Wyatt Prac. Reg. 355; 2 Sm. Ch. Pr. 628.*

The receiver appointed in this case was not such a person.

The defendants must be credited with the net amount of moneys received by the receiver, without any allowance for commissions, and, if not agreed upon, this amount must be ascertained by the master to whom reference was made for that purpose, and not by the master whose report is now under exception; and no costs must be allowed the complainant as against the defendant for any of the proceedings for the appointment of the receiver or calling upon him to account.